# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| AARON HARPER, Individually and On Behalf of All Others Similarly Situated, | Case No.: 1:19-cv-07390-RA |
| Plaintiff, | CLASS ACTION |
| v. | |
| 2U, INC., CHRISTOPHER J. PAUCEK, and CATHERINE A. GRAHAM, | |
| Defendants. | |
| ANNE M. CHINN, Individually and on Behalf of All Others Similarly Situated, | Case No.: 1:19-cv-07479-RA |
| Plaintiff, | CLASS ACTION |
| v. | |
| 2U, INC., CHRISTOPHER J. PAUCEK and CATHERINE A. GRAHAM, | |
| Defendants. | |

**MEMORANDUM IN SUPPORT OF THE MOTION OF ANDERS-CHRISTIAN MOELLER TO CONSOLIDATE RELATED ACTIONS, APPOINT LEAD PLAINTIFF, AND APPROVE PROPOSED LEAD PLAINTIFF'S CHOICE OF COUNSEL**

**TABLE OF CONTENTS**

Page:

PRELIMINARY STATEMENT ................................................................................................... 1
RELEVANT FACTUAL AND PROCEDURAL BACKGROUND ........................................... 2
ARGUMENT .................................................................................................................................. 5
I.    THE COURT SHOULD CONSOLIDATE THE RELATED ACTIONS ........................... 5
II.   THE COURT SHOULD APPOINT MR. MOELLER LEAD PLAINTIFF ........................ 6
     A.    The Procedural Requirements of the PSLRA ........................................................... 6
     B.    Mr. Moeller Is the "Most Adequate Plaintiff" .......................................................... 7
          1.    The Published Notice Satisfies the PSLRA's Requirements and Movants' Motion Is Timely and Procedurally Complete .......................... 7
          2.    Mr. Moeller Has the Largest Known Financial Interest ............................. 8
          3.    Mr. Moeller Satisfies the Requirements of Rule 23 .................................... 8
              i.    Mr. Moeller's Claims Are Typical of the Claims of All the Class Members ................................................................ 9
              ii.   Mr. Moeller Will Adequately Represent the Class ....................... 10
III.  THE COURT SHOULD APPROVE MR. MOELLER'S CHOICE OF LEAD COUNSEL ................................................................................... 11
CONCLUSION ............................................................................................................................. 13

# TABLE OF AUTHORITIES

Page(s):

**Cases**

*Daniels v. City of N.Y.*,
   198 F.R.D. 409 (S.D.N.Y. 2001) ............................................................................................. 9

*Ferrari v. Impath*,
   No. 03-cv-5667, 2004 U.S. Dist. LEXIS 13898
   (S.D.N.Y. July 15, 2004) ........................................................................................................ 9

*Hom v. Vale, S.A.*,
   No. 15-cv-9359, 2016 U.S. Dist. LEXIS 28863
   (S.D.N.Y. Mar. 7, 2016) ......................................................................................................... 1

*In re Facebook, Inc., IPO Sec. & Derivative Litig.*,
   288 F.R.D. 26 (S.D.N.Y. 2012) .............................................................................................. 7

*In re Gentiva Sec. Litig.*,
   281 F.R.D. 108 (E.D.N.Y. 2012) ............................................................................................ 1

*In re Heritage Bond Litig.*,
   MDL Case No. 02-ML-1475 DT, 2004 U.S. Dist. LEXIS 15386
   (C.D. Cal. July 12, 2004) ........................................................................................................ 9

*In re Lucent Techs. Sec. Litig.*,
   194 F.R.D. 137 (D.N.J. 2000) ............................................................................................... 11

*In re Nortel Networks Corp.*,
   No. 01-CV-1855 (RMB), 2002 U.S. Dist. LEXIS 1633
   (S.D.N.Y. Feb. 4, 2002) ........................................................................................................ 11

*In re Olsten Corp. Sec. Litig.*,
   3 F. Supp. 2d 286 (E.D.N.Y. 1998) ........................................................................................ 6

*In re Oxford Health Plans, Inc., Sec. Litig.*,
   182 F.R.D. 42 (S.D.N.Y. 1998) .............................................................................................. 9

*Kokkinis v. Aegean Marine Petroleum Network, Inc.*,
   No. 11-CV-0917, 2011 U.S. Dist. LEXIS 54939
   (S.D.N.Y. May 19, 2011) ....................................................................................................... 7

*Kux-Kardos v. VimpelCom, Ltd.*,
   151 F. Supp. 3d 471 (S.D.N.Y. 2016) ..................................................................................... 5

*Primavera Familienstiftung v. Askin*,
   173 F.R.D. 115 (S.D.N.Y. 1997) ............................................................................................ 5

*Rossini v. Ogilvy & Mather, Inc.*,
   798 F.2d 590 (2d Cir. 1986) ................................................................................................... 9

*Sczensy Trust v. DiCamillo*,
   223 F.R.D. 319 (S.D.N.Y. 2004) ............................................................................................ 9

*Sofran v. Labranche & Co.*,
   220 F.R.D. 398 (S.D.N.Y. 2004) ............................................................................................ 6

*Weinberg v. Atlas Air Worldwide Holdings, Inc.*,
   216 F.R.D. 248 (S.D.N.Y. 2003) ............................................................................................ 9

**Statutes**

15 U.S.C. § 78 ............................................................................................................................ *passim*

**Rules**

Fed. R. Civ. P. 6 .................................................................................................................................8

Fed. R. Civ. P. 23 ........................................................................................................................ 9, 10

Fed. R. Civ. P. 42(a) ..........................................................................................................................5

**Other**

Wright & Miller, *Consolidation—Discretion of Court*,
    9A FED. PRAC. & PROC. CIV. § 2383 (3d ed.) .............................................................................5

**PRELIMINARY STATEMENT**

Anders-Christian Moeller ("Mr. Moeller" or "Movant") respectfully submits this Memorandum of Law in support of his Motion to: (i) consolidate the related securities class actions filed against 2U, Inc. ("2U" or the "Company") and certain related Defendants (defined below);[1] (ii) appoint him Lead Plaintiff pursuant to the Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. § 78u-4(a)(3)(B); (iii) approve his selection of Kahn Swick & Foti, LLC ("KSF") as Lead Counsel for the Class; and (iv) grant such other and further relief as the Court may deem just and proper.

As outlined below, and as described in his Certification and Loss Chart (which are attached as Exhibit A and Exhibit B, respectively, to the Declaration of Melinda A. Nicholson in Support of the Motion of Anders-Christian Moeller to Consolidate Related Actions, Appoint Lead Plaintiff, and Approve Proposed Lead Plaintiff's Choice of Counsel ("Nicholson Decl.")), Mr. Moeller has suffered substantial losses in connection with his acquisitions of 2U securities from February 26, 2018 and July 30, 2019, inclusive (the "Class Period").[2] **Specifically, Mr. Moeller has suffered approximately $556,527.66 in losses as a result of his transactions in**

---

[1] The related securities class actions include *Harper v. 2U, Inc., et al.*, No. 1:19-cv-07390-RA (S.D.N.Y), filed on August 7, 2019, and *Chinn v. 2U, Inc., et al.*, No. 1:19-cv-07479- RA (S.D.N.Y.), filed on August 9, 2019.

[2] The *Harper* Complaint alleges a Class Period between February 25, 2019 and July 30, 2019 on behalf of purchasers of 2U securities. The *Chinn* Complaint alleges a Class Period between February 26, 2018 and July 30, 2019 on behalf of purchasers of 2U common stock, all dates inclusive. For the purpose of this Motion, Movant adopts the most expansive Class Period—*i.e.*, the beginning of the Class Period set forth in the *Chinn* Complaint and the more inclusive class on behalf of purchasers of 2U securities as set forth in *Harper*. *See, e.g.*, *Hom v. Vale, S.A.*, No. 15-cv-9539, 2016 U.S. Dist. LEXIS 28863, at *12-13 (S.D.N.Y. Mar. 7, 2016) ("[T]he Court finds that the use of the longer, more inclusive class period is proper for purposes of the present [lead plaintiff] motion[s] because the longer class period encompasses more potential class members and damages."); *In re Gentiva Sec. Litig.*, 281 F.R.D. 108, 113-114 (E.D.N.Y. 2012) (court favoring a broader class which "encompasses more potential class members" early in the litigation at the lead plaintiff stage.).

**2U stock during the Class Period.**  To the best of his knowledge, Mr. Moeller has sustained the largest loss of any investor seeking to be appointed Lead Plaintiff.

What is more, as further outlined in Mr. Moeller's Certification, he fully understands his duties and responsibilities to the Class and is willing and able to oversee the vigorous prosecution of this action.  *See* Nicholson Decl. Ex. A.  Moreover, Mr. Moeller satisfies both the applicable requirements of the PSLRA and Rule 23 of the Federal Rules of Civil Procedure ("Rule 23"), and is therefore presumptively the "most adequate plaintiff." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

Accordingly, Mr. Moeller respectfully requests that the Court (1) consolidate all related actions; (2) appoint him Lead Plaintiff; and (3) approve his choice of KSF as Lead Counsel for the Class.

## RELEVANT FACTUAL AND PROCEDURAL BACKGROUND[3]

Defendant 2U is an educational technology company, headquartered in Lanham, Maryland, that works with universities to provide online graduate programs and certificates for working adults.  At all relevant times, Defendant Christopher J. Paucek ("Paucek") served as the Company's Chief Executive Officer ("CEO").  Defendant Catherine A. Graham ("Graham") was the Company's Chief Financial Officer ("CFO") at all relevant times.[4]

Prior to the start of the Class Period, the Company was organized into two segments: a "Graduate Program" segment for students seeking a full graduate degree, and a "Short Course" segment, later renamed the "Alternative Credential" segment, directed to working professionals seeking career advancement through skills attainment.

---

[3]   These facts were derived from the *Harper* and *Chinn* Complaints.

[4]   Defendants Paucek and Graham are collectively referred to herein as the "Individual Defendants."  Defendant 2U and the Individual Defendants are sometimes referred to herein collectively as "Defendants."

On February 26, 2018, the Company announced its fourth quarter and fiscal year 2017 financial results and fiscal year 2018 guidance, with Defendant Paucek stating in the accompanying press release that the Company was "at the forefront of the digital transformation in higher education."  On February 25, 2019, the Company released its fourth quarter and fiscal year 2018 financial results and fiscal year 2019 guidance.  In the accompanying conference call Defendant Paucek stated that "our business is resilient, it's diversified, and it's growing," that "the company is fully funded," and that the Company was on track to grow revenues from $411.8 million in fiscal 2018 to a range of $546.6 to $550.8 million in fiscal 2019.

On April 8, 2019, the Company announced its acquisition of Trilogy Education Services, Inc. ("Trilogy") for $750 million in cash and stock, and that the merger with Trilogy, a "workforce accelerator that prepares adult learners for high-growth careers in the digital economy," would "accelerate [2U's] path to [achieving] $1 billion in revenue."

On May 7, 2019, the Company lowered its revenue guidance for fiscal 2019 to a range of $534 to $537 million, from a prior range of $546.6 to $550.8 million, due to declining average enrollments in some of its largest graduate programs.  This news caused the Company's share price to fall $15.16, or nearly 26%, to close at $44.77 per share on May 8, 2019, on unusually heavy trading volume.

On July 30, 2019, post-market, the Company released its second quarter 2019 financial results including expected net losses of between $157.5 million and $151.5 million for the year, compared to prior net loss guidance between $79.0 and $77.2 million, a 300% year-over-year increase, noting that it would "moderate [its] grad program launch cadence."  In the accompanying conference call, Defendant Paucek explained that "[e]xcluding the expected financial impact of Trilogy, this implies a step down in revenue expectations for the rest of the

business," also citing a need to significantly curtail expansion plans that were a "mistake" and to "level set" with the investment community.  This news caused the Company's share price to fall $23.70, or nearly 65%, to close at $12.80 per share on July 31, 2019, on unusually heavy trading volume.

During the Class Period, the Company's stock fell from a high of over $98 per share to only $12.80 per share following the Company's July 30, 2019 announcement, a decline of more than 86%.

Throughout the Class Period, Defendants made materially false and misleading statements and failed to disclose material adverse facts regarding the Company's business, operations, and prospects.  Specifically, Defendants falsely and misleadingly represented that: (i) the Company faced increasing competition in online education and particularly regarding graduate programs; (ii) the Company faced certain program-specific issues that negatively impacted its performance; (iii) as a result, the Company's business model was not sustainable; (iv) the Company would slow its program launches; and (v) as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis, artificially inflating the price of 2U's securities during the Class Period.

The first lawsuit raising these allegations against Defendants was filed in this District on August 7, 2019, on behalf of purchasers of 2U's publicly traded securities between February 25, 2019 and July 30, 2019.  *Harper v. 2U, Inc., et al.*, No. 1:19-cv-07390-RA (S.D.N.Y.).  A subsequent lawsuit was filed in this District on August 9, 2019 on behalf of purchasers of 2U common stock between February 26, 2018 and July 30, 2019.  *Chinn v. 2U, Inc., et al.*, No. 1:19-cv-07479-RA (S.D.N.Y.).

On August 7, 2019, pursuant to 15 U.S.C. § 78u-4(a)(3)(A)(i), the first Notice that a class action had been initiated against Defendants was published on *Business Wire*, a widely-circulated national business-oriented wire service, advising members of the proposed Class of their right to move the Court to serve as Lead Plaintiff no later than 60 days from that day, or October 7, 2019.  *See* Nicholson Decl. Ex. C.  Mr. Moeller is a Class Member who has timely filed this motion within the 60-day period following publication of the August 7, 2019 Notice.  *See id.*

## ARGUMENT

### I.     THE COURT SHOULD CONSOLIDATE THE RELATED ACTIONS

Pursuant to the PSLRA, "[i]f more than one action on behalf of a class asserting substantially the same claim or claims arising under this title has been filed," courts shall not appoint a lead plaintiff until "after the decision on the motion to consolidate is rendered."  15 U.S.C. § 78u-4(a)(3)(B)(ii).  Pursuant to Rule 42(a), "[t]he Court enjoys 'broad discretion to determine whether consolidation is appropriate.'"  *Kux-Kardos v. VimpelCom, Ltd.*, 151 F. Supp. 3d 471, 475 (S.D.N.Y. 2016) (quoting *Johnson v. Celotex Corp.*, 899 F.2d 1281, 1284 (2d Cir. 1990)); Wright & Miller, *Consolidation—Discretion of Court*, 9A FED. PRAC. & PROC. CIV. § 2383 (3d ed.) ("[D]istrict court is given broad discretion to decide whether consolidation under Rule 42(a) would be desirable and the district judge's decision inevitably is highly contextual.").

Courts have recognized that securities class actions are ideally suited for consolidation pursuant to Fed. R. Civ. P. 42(a) because their unification expedites pretrial proceedings, reduces case duplication, avoids contacting of the parties and witnesses for inquiries in multiple proceedings, and minimizes the expenditure of time and money by all persons concerned.  *See, e.g.*, *Primavera Familienstiftung v. Askin*, 173 F.R.D. 115, 129 (S.D.N.Y. 1997).  Consolidating shareholder class actions streamlines and simplifies pre-trial and discovery proceedings,

including motions, class action issues, clerical and administrative duties, and generally reduces the confusion and delay that result from prosecuting related actions separately before two or more judges. *Id.*; *see also In re Olsten Corp. Sec. Litig.*, 3 F. Supp. 2d 286 (E.D.N.Y. 1998).

The two pending actions here make virtually identical allegations on behalf of a similar class of shareholders against the same Defendants. In light of these legal principles and the numerous commonalities shared by the actions, consolidation is appropriate under Rule 42(a).

## II.  THE COURT SHOULD APPOINT MR. MOELLER LEAD PLAINTIFF

### A.  The Procedural Requirements of the PSLRA

The PSLRA governs the appointment of a lead plaintiff for "each private action arising under [the Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." 15 U.S.C. §§ 78u-4(a)(1), 78u-4(a)(3)(B)(I). It provides that within 20 days of the filing of the action, the plaintiff is required to publish notice in a widely circulated business-oriented publication or wire service, informing class members of their right to move the Court, within sixty (60) days of the publication, for appointment as lead plaintiff. *See generally Sofran v. Labranche & Co.*, 220 F.R.D. 398, 401 (S.D.N.Y. 2004).

Under 15 U.S.C. § 78u-4(a)(3)(B)(i), the Court is then to consider any motion made by class members and is to appoint as lead plaintiff the movant that the Court determines to be most capable of adequately representing the interests of class members. *Id*. Further, the PSLRA establishes a rebuttable presumption that the "most adequate plaintiff" is the person that:

- (aa)  has either filed the complaint or made a motion in response to a notice [published by a complainant];
- (bb)  in the determination of the court, has the largest financial interest in the relief sought by the class; and
- (cc)  otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

Once it is determined who among the movants seeking appointment as lead plaintiff is the presumptive lead plaintiff, the presumption can be rebutted only upon proof by a class member that the presumptive lead plaintiff: "(aa) will not fairly and adequately protect the interests of the class; or (bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class."  15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

### B. Mr. Moeller Is the "Most Adequate Plaintiff"

#### 1. The Published Notice Satisfies the PSLRA's Requirements and Movants' Motion Is Timely and Procedurally Complete

Pursuant to the PSLRA, the process of appointment of lead plaintiff begins with the notice requirement.  15 U.S.C. §§ 78u-4(a)(1), 78u-4(3)(B)(i).  The notice requirement consists of two parts: (1) the first plaintiff to file must publish notice advising members of the putative plaintiff class of the pending action in a widely circulated national business-oriented publication or wire service; and (2) members of the putative class have sixty days from the date of publication to move the court to serve as lead plaintiff.  15 U.S.C. § 78u-4(a)(3)(A-B).

Here, notice was published on *Business Wire* on August 7, 2019.  *See* Nicholson Decl. Ex. C.[5]  The notice specified that applications for appointment as Lead Plaintiff were to be made no later than 60 days from that day, or October 7, 2019.  Thus, the Notice satisfied the PSLRA's

---

[5]   Publication by a national press release firm like *Business Wire* is an adequate means for meeting the PSLRA statutory requirement that notice be published in a widely circulated national business-oriented wire service.  *See, e.g.*, *In re Facebook, Inc., IPO Sec. & Derivative Litig.*, No. 12-2389, 288 F.R.D. 26, 32 (S.D.N.Y. 2012) (characterizing *Business Wire* as "a widely-circulated, national, business-orientated news reporting wire service" and accepting publication therein for purposes of satisfying the PSLRA's notice requirement); *Kokkinis v. Aegean Marine Petroleum Network, Inc.*, No. 11-CV-0917, 2011 U.S. Dist. LEXIS 54939, at *2 (S.D.N.Y. May 19, 2011) (noting that "[i]n this case, adequate notice was published … in Business Wire, a national wire service.").

requirements. *See* 15 U.S.C. § 78u-4(a)(3)(A)(i).

Because the original notice was published on August 7, 2019, the deadline for application to be lead plaintiff is October 7, 2019. *See* Nicholson Decl. Ex. C; FED. R. CIV. P. 6. Movant has therefore timely filed his motion prior to the expiration of the lead plaintiff filing deadline. Moreover, Movant has signed and submitted a Certification with this Motion. As reflected in that Certification, Mr. Moeller certified his trading history during the relevant period and confirmed his willingness and ability to serve as Lead Plaintiff. Nicholson Decl. Ex. A. Thus, he has satisfied the certification requirement set forth in 15 U.S.C. §§ 78u-4(a)(2)(A). The PSLRA's procedural requirements have therefore been satisfied.

### 2. Mr. Moeller Has the Largest Known Financial Interest

During the Class Period, as evidenced by his Certification, Mr. Moeller purchased 2U securities in reliance upon the materially false and misleading statements issued by the Defendants and was injured thereby. *See* Nicholson Decl. Ex. A. In addition, Mr. Moeller incurred a substantial loss on his transactions in 2U common stock, as detailed in his Loss Chart. *See* Nicholson Decl. Ex. B. **Specifically, Mr. Moeller has suffered approximately $556,527.66 in losses as a result of his transactions in 2U stock during the Class Period.** *Id.* To the best of his knowledge, Mr. Moeller thus has the largest financial interest in the relief sought. Therefore, Mr. Moeller satisfies all of the PSLRA's prerequisites for appointment as Lead Plaintiff in this action and should be appointed Lead Plaintiff pursuant to 15 U.S.C. § 78u-4(a)(3)(B).

### 3. Mr. Moeller Satisfies the Requirements of Rule 23

According to 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I), in addition to possessing the largest financial interest in the outcome of the litigation, the Lead Plaintiff must also "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." Courts have

consistently held that, at this stage, the Rule 23 considerations are limited to the questions of typicality and adequacy. *See In re Oxford Health Plans, Inc., Sec. Litig.*, 182 F.R.D. 42, 49 (S.D.N.Y. 1998) (holding that typicality and adequacy are the only relevant prerequisites to lead plaintiff selection under the PSLRA); *see also Sczensy Trust v. DiCamillo*, 223 F.R.D. 319, 323-24 (S.D.N.Y. 2004) (same); *Weinberg v. Atlas Air Worldwide Holdings, Inc.*, 216 F.R.D. 248, 252 (S.D.N.Y. 2003) ("In fact, a 'wide ranging analysis under Rule 23 is not appropriate [at this initial stage of the litigation] and should be left for consideration of a motion for class certification.'") (quoting *In re Party City Sec. Litig.*, 189 F.R.D. 91, 106 (D.N.J. 1999)).  As detailed below, Mr. Moeller satisfies both the typicality and adequacy requirements of Rule 23.  *See also* Nicholson Decl. Ex. A.

> **i.     Mr. Moeller's Claims Are Typical of the Claims of All the Class Members**

Under Rule 23(a)(3), typicality exists where "the claims … of the representative parties" are "typical of the claims … of the class."  The typicality requirement of Rule 23(a)(3) is satisfied when the representative plaintiff's claims arise from the same event or course of conduct that gives rise to claims of other class members, and when the claims are based on the same legal theory.  *See Rossini v. Ogilvy & Mather, Inc.*, 798 F.2d 590, 598 (2d Cir. 1986). The requirement that the proposed class representatives' claims be typical of the claims of the class does not mean, however, that the claims must be identical.  *Daniels v. City of N.Y.*, 198 F.R.D. 409, 418 (S.D.N.Y. 2001) (citing *Wilder v. Bernstein*, 499 F. Supp. 980, 922 (S.D.N.Y. 1980)); *see also Ferrari v. Impath*, No. 03-cv-5667, 2004 U.S. Dist. LEXIS 13898, at *18 (S.D.N.Y. July 15, 2004) (same); *In re Heritage Bond Litig.*, MDL Case No. 02-ML-1475 DT, 2004 U.S. Dist. LEXIS 15386, at *25 (C.D. Cal. July 12, 2004) ("Courts have held that if the claims of the named plaintiffs and putative class members involve the same conduct by the

defendant, typicality is established regardless of the factual differences.").

In this case, the typicality requirement is met because Mr. Moeller's claims are identical, non-competing, and non-conflicting with the claims of the other Class Members. Mr. Moeller and all the other Class Members: (1) acquired 2U securities during the Class Period; (2) acquired 2U securities in reliance upon the allegedly materially false and misleading statements issued by Defendants; and (3) suffered damages by acquiring 2U securities at artificially inflated prices and then suffered harm when the truth was revealed and the inflation was removed from the stock price. Thus, Mr. Moeller's claims are typical of those of other Class Members since his claims and the claims of other Class Members resulted from the same illegal practices.

### ii.    Mr. Moeller Will Adequately Represent the Class

Under Rule 23(a)(4), the representative parties must also "fairly and adequately protect the interests of the class." The PSLRA directs this Court to limit its inquiry regarding the adequacy of the Movant to the existence of any conflicts between the interests of the Movant, on the one hand, and the members of the class, on the other hand. The standard for adequacy of representation under Rule 23(a)(4) is met (1) by the absence of potential conflicts between the named plaintiff and the other class members; and (2) if the proposed class representative's choice of counsel can prosecute vigorously on behalf of the class. *See* 15 U.S.C. § 78u-4(a)(3)(B).

Here, Mr. Moeller is an adequate representative of the Class. Mr. Moeller is a sophisticated investor with years of experience in the financial services industry. As evidenced by the injuries suffered by Mr. Moeller, who acquired 2U common stock at prices that were artificially inflated by Defendants' materially false and misleading statements, the interests of Mr. Moeller are clearly aligned with the members of the Class, and there is no

evidence of any antagonism between his interests and those of the other members of the Class. Furthermore, Mr. Moeller has retained competent, experienced, and highly qualified counsel who are able to conduct this complex litigation in a professional manner. *Infra* §III. Thus, Mr. Moeller *prima facie* satisfies the typicality and adequacy requirements of Rule 23 and should be appointed Lead Plaintiff.

### III.  THE COURT SHOULD APPROVE MR. MOELLER'S CHOICE OF LEAD COUNSEL

Pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(v), the proposed Lead Plaintiff shall, subject to Court approval, select and retain counsel to represent the class they seek to represent. Courts have refrained from disturbing lead plaintiffs' choice of counsel unless it is necessary to "protect the interests of the class." *In re Lucent Techs. Sec. Litig.*, 194 F.R.D. 137, 155 (D.N.J. 2000) (citing Conference Report on Securities Litigation Reform, H.R. Rep. No. 369, 104th Congress, 1st Sess. 31, *reprinted in* 1995 U.S.C.C.A.N. 679, 685); *In re Nortel Networks Corp.*, No. 01-CV-1855 (RMB), 2002 U.S. Dist. LEXIS 1633, at *2 (S.D.N.Y. Feb. 4, 2002) (same).

Here, Mr. Moeller has selected KSF to be Lead Counsel for the Class. As reflected in its firm resume, KSF is more than qualified to work as Lead Counsel to prosecute the claims of the Class. With lawyers in Louisiana, New York, and California dedicated to the practice of class action and individual investor securities and corporate governance litigation, KSF is one of the nation's premier boutique securities litigation law firms. KSF has represented stockholders as lead or co-lead counsel in numerous class and derivative litigations, many of which have resulted in substantial recoveries on behalf of stockholders, amounting to hundreds of millions of dollars. *See* Nicholson Decl. Ex. D (KSF Firm Resume).

Notably, KSF has achieved numerous litigation successes serving as lead, co-lead, or executive committee counsel in other securities class actions, including in this District. *See*

Nicholson Decl. Ex. D (citing *In Re Health Ins. Innovations*, No. 8:17-cv-2186 (M.D. Fla.) (denying in part defendants' motion to dismiss securities class action on June 28, 2019); *Shanawaz v. Intellipharmaceutics Int'l Inc., et al.*, No. 1:17-cv-5761 (S.D.N.Y.) (denying in part defendants' motion to dismiss securities class action on December 17, 2018); *Dougherty v. Esperion Therapeutics, Inc., et al.*, No. 17-1701 (6th Cir.) (reversing and remanding lower court's dismissal of securities class action on September 27, 2018)). Most recently in the Southern District of New York, on June 22, 2018, KSF was found to have "made a substantial contribution to the class" in obtaining a **$3 billion settlement** from Brazil's state-controlled petrochemical company in connection with the largest corruption scandal in the history of Latin America, arising from defendants' alleged deliberate overpayments on various construction contracts in return for kickbacks. *See id.* (citing *In re Petrobras Sec. Litig.*, No. 1:14-cv-9662 (S.D.N.Y.)).

KSF also served as special counsel to the lead plaintiff in *The Erica P. John Fund, Inc. v. Halliburton Company, et al.*, No. 3:02-cv-1152-M (N.D. Tex.), which settled for $100 million. KSF's co-counsel in that case was David Boies of Boies Schiller Flexner LLP, a nationally-renowned litigation and appellate law firm that litigated the *Bush v. Gore* matter before the United States Supreme Court, among others. Prior to settlement, the *Halliburton* case itself had twice been to the United States Supreme Court. In the first instance, plaintiffs won 9-0. In the second instance, the Halliburton defendants challenged the "fraud on the market theory," the fundamental theory on which all class action securities litigation rests. Despite the Halliburton defendants' protestations, the Supreme Court sided with the plaintiffs and upheld that theory. As the aforementioned cases demonstrate, KSF has the requisite experience and knowledge in litigating complex shareholder cases.

Thus, the Court may be assured that, in granting this motion, the Class will continue to receive legal representation of the highest caliber.

## CONCLUSION

For all of the foregoing reasons, Mr. Moeller respectfully requests that this Court: (1) consolidate the related actions; (2) appoint him as Lead Plaintiff in this consolidated action; (3) approve his selection of KSF as Lead Counsel for the Class; and (4) grant such other and further relief as the Court may deem just and proper.

DATED: October 7, 2019         Respectfully submitted,

**KAHN SWICK & FOTI, LLC**

*/s/ Melinda A. Nicholson*
Lewis S. Kahn
Melinda A. Nicholson (MN-6251)
Michael J. Palestina
1100 Poydras Street, Suite 3200
New Orleans, LA 70163
Telephone: (504) 455-1400
Facsimile: (504) 455-1498
Email: Lewis.Kahn@ksfcounsel.com
Email: Melinda.Nicholson@ksfcounsel.com
Email: Michael.Palestina@ksfcounsel.com

-and-

J. Ryan Lopatka
250 Park Avenue, Suite 2040
New York, NY 10177
Telephone: (212) 696-3730
Facsimile: (504) 455-1498
Email: J.Lopatka@ksfcounsel.com

*Counsel for Movant Anders-Christian Moeller and Proposed Lead Counsel for the Class*

**CERTIFICATE OF SERVICE**

    I HEREBY CERTIFY that on October 7, 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a Notice of Electronic Filing to all CM/ECF participants. I further certify that I mailed the foregoing document and the notice of electronic filing via U.S. first-class mail to any non-CM/ECF participants.

                                           */s/ Melinda A. Nicholson*
                                           Melinda A. Nicholson